**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| CHRIS ANN JAYE,<br><br>    Plaintiff,<br><br>    v.<br><br>OAK KNOLL VILLAGE<br>CONDOMINIUM OWNERS<br>ASSOCIATION, INC., et al.,<br><br>    Defendants. | Civil Action No. 15-8324 (MAS) (DEA)<br><br>**MEMORANDUM OPINION** |

**SHIPP, District Judge**

  This matter comes before the Court on the fifteen Motions to Dismiss filed by the following defendants: (1) Brown Moskowitz & Kallen, P.C. ("BMK") and Steven R. Rowland ("Rowland") (ECF No. 136); (2) Mirra & Associates, LLC ("Mirra") (ECF No. 138); (3) J. Fletcher-Creamer & Sons ("Creamer") (ECF No. 143); (4) Fox Chase Contracting, LLC ("Fox Chase") (ECF No. 152); (5) Edward Berman, Esq. ("Berman") and Berman, Sauter, Record & Jacobs, PC ("BSRJ") (ECF No. 155); (6) Marshall, Dennehey, Warner, Coleman & Goggin ("Marshall Dennehey") (ECF No. 156); (7) Suburban Consulting Engineers ("Suburban") (ECF No. 157); (8) GNY Insurance Companies ("GNY"), Strathmore Insurance ("Strathmore"), and the Law Offices of Ann M. McGuffin ("McGuffin Law") (ECF No. 161); (9) Schenck, Price, Smith & King, LLP ("Schenck Price") (ECF No. 166); (10) Community Association Underwriters of America, Inc. ("CAU") and QBE Insurance Corporation ("QBE") (ECF No. 168); (11) Pumping Services, Inc. ("Pumping Services") (ECF No. 170); (12) Fox Chase, Hill Wallack, Maintenance Solutions Inc. ("Maintenance Solutions"), Kenneth Sauter, Esq. and CPA ("Sauter"), Stephenson & Associates

("S&A"), and Stephenson Associates, Inc. ("SAI") (ECF No. 172); (13) Williams Transcontinental Gas Pipeline ("Williams Gas") (ECF No. 185); (14) Access Property Management ("Access"), Tracy Blair ("Blair"), Condo Management Maintenance Corporation ("Condo Management"), Jennifer Cooling ("Cooling"), Marilyn Cousins ("Cousins"), Les Giese ("Giese"), Kelly Jones ("Jones"), Dennis Leffler ("Leffler"), Oak Knoll Village Condominium Owners Association, Inc. ("OK Owners Association"), RCP Management ("RCP"), Konstantinos Rentoulis ("Rentoulis"), Erick P. Spronck ("Spronck"), Robert A. Stephenson ("Stephenson"), the Estate of Joseph Cousins ("Estate"), and Anne Thorton ("Thorton") (ECF No. 186); and (15) Clinton Township Sewer Authority ("Clinton Sewer") (ECF No. 187) (collectively, "Moving Defendants").[1]

Plaintiff Chris Ann Jaye ("Plaintiff") opposed (ECF Nos. 181, 182, 210, 225) and the Moving Defendants replied (ECF Nos. 212, 216, 219, 220, 222, 223, 226, 227, 232, 235, 236).

Moreover, as to BMK and Rowland's Motion to Dismiss, Plaintiff did not submit opposition, and instead filed Motions to Strike their Motion to Dismiss, to bar Rowland from the ability to file electronically, to subpoena records from BMK, and for sanctions. (ECF No. 189.) After Plaintiff's Motions were briefed (ECF Nos. 198, 205), the Honorable Douglas E. Arpert, U.S.M.J., found Plaintiff's Motions meritless and denied Plaintiff's Motions. (ECF No. 261.) Judge Arpert further ordered that "should Plaintiff wish to file a response to [BMK and Rowland's Motion to Dismiss], she must do so within 14 days of the date of this Order." (*Id.*) Specifically, Plaintiff's deadline to file opposition was November 7, 2016. Plaintiff did not file an opposition.

---

[1] Defendants Henkels and McCoy, Inc. and Frey Engineering did not file motions to dismiss. "Defendants" refers to all defendants, including Henkels and McCoy, Inc. and Frey Engineering.

The Court has carefully considered the parties' submissions and decides the motions without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, the Moving Defendants' Motions to Dismiss are GRANTED with prejudice.

## I.   Procedural History & Background

### A.   Plaintiff's 2012 Action

In March 2012, Plaintiff filed a five-count complaint ("2012 Action") with the Superior Court of New Jersey against Stephenson, Spronck, the OK Owners Association, and BSRJ (collectively, "March 2012 Defendants"), all of whom are defendants in the instant matter. (BMK & Rowland's Moving Br. Ex. A ("March 2012 Complaint"), ECF No. 136-3.) The March 2012 Complaint is based on events arising in 2011 and alleged the following five counts: (1) Harassment; (2) Intentional Infliction of Emotional Distress; (3) Breach of Fiduciary Duty; (4) Contempt; and (5) Violation of the Fair Debt Collection Practices Act ("FDCPA"). (*Id.*) Plaintiff alleged that the March 2012 Defendants made various offensive and insulting comments to her and to the condominium community in an effort to force her out of that community. (*Id.* ¶¶ 8-12.) The March 2012 Defendants allegedly labeled her as "delusional" and a "conspiracy theorist," and would intimidate, threaten, and otherwise harass Plaintiff by various means. (*Id.* ¶¶ 8-27.)

The 2012 Action also alleged that the March 2012 Defendants engaged in discriminatory enforcement of condominium by-laws, rules, and state laws by refusing to comply with her various requests and by overcharging her various fees. (*Id.* ¶¶ 28-57.) Plaintiff further alleged that the March 2012 Defendants violated the FDCPA. (*Id.* ¶¶ 66-74.) Additionally, Plaintiff alleged that the March 2012 Defendants failed to comply with a court order under the Open Public Meetings Act. (*Id.* ¶¶ 58-65.)

In their answer, the March 2012 Defendants counterclaimed, alleging that Plaintiff was delinquent in her payment of assessments, charges, obligations, and expenses to the OK Owners Association. (BMK & Rowland's Moving Br. Ex. B ¶¶ 1-3 ("March 2012 Counterclaim"), ECF No. 136-3.) The March 2012 Defendants, therefore, requested judgment in the amount of the delinquency and costs of suit. (*Id.* ¶ 3.) The Superior Court dismissed all of Plaintiff's claims with prejudice. (BMK & Rowland's Moving Br. Ex. D ("March 2013 Decision") at 266-74[2] & Ex. F, ECF No. 136-3.) Additionally, the court's decision on the March 2012 Defendants' Motion for Summary Judgment on the Counterclaim rejected Plaintiff's conclusory allegations of fraud, and granted summary judgment against Plaintiff for $6,529.92 ("March 2013 Judgment"). (March 2013 Decision at 269-70.)

Plaintiff refused to pay the March 2013 Judgment, even after an information subpoena was issued. This resulted in sanctions against Plaintiff after the court granted a motion to enforce litigants' rights. (BMK & Rowland's Moving Br. Exs. G-K, ECF No. 136-3.) Plaintiff further challenged the March 2013 Judgment in the Appellate Division and the Appellate Division affirmed the judgment. (BMK & Rowland's Moving Br. Ex. L, ECF No. 136-3.)

**B.     OK Owners Association's 2014 Action**

In 2014, the OK Owners Association filed an action against Plaintiff ("2014 Action") seeking to recover Plaintiff's delinquent financial obligations to the OK Owners Association. (BMK & Rowland's Moving Br. Ex. N ("May 2014 Complaint") ¶¶ 3-12, ECF No. 136-3.) Soon afterward, the court granted final judgment against Plaintiff for $8,448.00 plus attorneys' fees and costs. (BMK & Rowland's Moving Br. Ex. O, ECF No. 136-3.)

---

[2] The page numbers refer to the page numbers marked on the bottom of the page for the Memorandum Opinion portion of Exhibit D. Exhibit D also contains Orders, which are not continuously paginated with the Opinion.

### C.   OK Owners Association's 2015 Action

In 2015, OK Owners Association filed yet another action ("2015 Action") for delinquent financial obligations against Plaintiff.  (BMK & Rowland's Moving Br. Ex. R ("June 2015 Complaint"), ECF No. 136-3.)  Plaintiff attempted to remove the 2015 Action to federal court by pleading an FDCPA counterclaim, but the case was remanded.  (BMK & Rowland's Moving Br. Ex. S, ECF No. 136-3.)  The Superior Court subsequently entered final judgment against Plaintiff for $11,812.58.  (BMK & Rowland's Moving Br. Ex. T, ECF No. 136-4.)

### D.   Plaintiff's 2014 Action Against the New Jersey Attorney General, the New Jersey State Judiciary, and Other State Government Personnel

In December 2014, Plaintiff filed an action against the New Jersey Attorney General, the New Jersey State Judiciary, and various other state government personnel.  *See* Complaint, *Jaye v. N.J. Attorney Gen. John Hoffman, et al.*, No. 14-7471 (D.N.J. Dec. 2, 2014), ECF No. 1 ("Plaintiff's Action against the State").  Plaintiff's Action against the State alleged facts arising from the preceding litigation in state court relating to Plaintiff's condominium fees.  (*Id.* at 13-63.)[3]  In doing so, Plaintiff first challenged the constitutionality of the New Jersey Condominium Act.  (*Id.* at 1-11.)  Next, Plaintiff argued that various state personnel unlawfully aided the alleged illegal governance of the OK Owners Association in violation of the FDCPA.  (*Id.* at 13-18.)  Finally, Plaintiff alleged that the state court judges unlawfully ruled against her as part of a large criminal conspiracy.  (*Id.* at 18-63.)

In Plaintiff's Action against the State, the Court repeatedly found Plaintiff's pleadings to contain insufficient detail to comply with Rule 8 of the Federal Rules of Civil Procedure ("Rule").  *See Jaye v. N.J. Attorney Gen. John Hoffman, et al.*, No. 14-7471 (D.N.J. May 25, 2016).  After

---

[3] The Court cites to page numbers in this complaint, as opposed to paragraph numbers, because the paragraph numbers re-start intermittently and are not continuous.

providing Plaintiff with three opportunities to comply with Rule 8, the Court dismissed Plaintiff's

Second Amended Complaint with prejudice for failure to state a claim. (*Id.* at 2.) Moreover, the

Court further found that dismissal was required pursuant to the *Rooker-Feldman* doctrine because

Plaintiff's Action against the State constituted Plaintiff's attempt to seek the Court's review of a

state judgment. (*Id.* at 2-4.)

### E.    The Instant Action

On November 30, 2015, Plaintiff filed the instant action against Defendants alleging

various facts related to the OK Owners Association. (Compl., ECF No. 1.)  The instant action

implicates every person Plaintiff believes is in any way connected to the OK Owners Association

and the litigation surrounding Plaintiff's delinquent financial obligations to the OK Owners

Association. (*Id.* ¶¶ 1-47.) This includes all the lawyers, parties, contractors, and other individuals

and entities involved in the litigation or the collection of the various judgments against Plaintiff.

(*Id.*)  Plaintiff brings the following five counts: (1) Civil RICO violations; (2) FDCPA violations;

(3) Invasion of Privacy; (4) Intentional Infliction of Emotional Distress; and (5) Nuisance. (Am.

Compl. ¶¶ 86-130, ECF No. 111.)

Various defendants proceeded to file motions to dismiss, arguing, *inter alia*: (1) expiration

of the statute of limitations; (2) Plaintiff signed a stipulation of dismissal with prejudice that the

instant matter violates; (3) the *Rooker-Feldman* doctrine precludes jurisdiction; (4) Plaintiff fails

to allege the requisite elements for the stated causes of action; and (5) res judicata and collateral

estoppel. (ECF Nos. 11, 12, 17, 20, 21, 22, 45, 46, 50, 80, 82, 85, 86, 87.)

Before the Court could adjudicate the pending motions to dismiss, Plaintiff filed an

Amended Complaint. (ECF No. 111.)  The Court accordingly denied the pending motions without

prejudice and permitted Defendants to file the now-pending Motions to Dismiss based on the Amended Complaint. (ECF No. 129.)

After the pending motions were filed, Plaintiff moved for leave to file a Second Amended Complaint, claiming the discovery of new evidence. (ECF No. 209.) As Plaintiff failed to attach a copy of the proposed Second Amended Complaint, as required by Local Civil Rule 7.1(f), the Court denied Plaintiff's motion without prejudice. (ECF No. 221.) Approximately five months have passed and Plaintiff has not filed a renewed motion to amend accompanied by a proposed Second Amended Complaint.

## II.   Legal Standard

When analyzing a Rule 12(b)(6) motion, district courts conduct a three-part analysis. First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court, however, must disregard any conclusory allegations proffered in the complaint. *Id.* at 210-11. Finally, once the well-pleaded facts have been identified and the conclusory allegations ignored, a court must determine whether the "facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679).

In contrast, a plaintiff pleading fraud "must meet a heightened pleading standard under Federal Rule of Civil Procedure 9(b)." *Zuniga v. Am. Home Mortg.*, No 14-2973, 2016 WL 6647932, at *2 (D.N.J. Nov. 8, 2016). "In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud . . . ." Fed. R. Civ. P. 9(b). "A plaintiff alleging fraud must therefore support [her] allegations 'with all of the essential factual background that would

accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue.'" *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)).

"Where, as here, a plaintiff is proceeding pro se, the complaint is 'to be liberally construed,' and, 'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Walsh v. Household Fin. Corp. III*, No. 15-4112, 2016 WL 6826161, at *2 (Nov. 17, 2016) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007)). "While a litigant's pro se status requires a court to construe the allegations in the complaint liberally, a litigant is not absolved from complying with *Twombly* and the federal pleading requirements merely because s/he proceeds pro se." *Id.* (quoting *Thakar v. Tan*, 372 F. App'x 325, 328 (3d Cir. 2010)). Further, "[p]ro se plaintiffs are . . . not exempt from meeting the heightened pleading requirements of Rule 9(b) when alleging claims that sound in fraud." *Zuniga*, 2016 WL 6647932, at *2.

## III.    Parties' Positions[4]

### A.    *Rooker-Feldman* Doctrine

Defendants Mirra (Mirra's Moving Br. 19-21, ECF No. 138-1), Berman and BSRJ (Berman & BSRJ's Moving Br. 5-6, ECF No. 155-1), Suburban (Suburban's Moving Br. 6-10, ECF No. 157-1), GNY, Strathmore, and McGuffin Law (collectively, "GSM Defendants") (GSM Defendants' Moving Br. 7-8, ECF No. 161-1), Schenck Price (Schenck Price's Moving Br. 8-9, ECF No. 9), CAU and QBE (CAU & QBE's Moving Br. 5-10, ECF No. 168-1), and Maintenance Solutions, Sauter, S&A, and SAI (Maintenance Solutions, et al.'s Moving Br. 18-19, ECF No.

---

[4] Given the voluminous submission by the parties, the Court omits elaboration of immaterial arguments made by the parties.

172-1)[5] (collectively, "These Defendants" for the purposes of this subsection) all argue that the Court lacks subject matter jurisdiction under the *Rooker-Feldman* Doctrine. These Defendants assert that Plaintiff is a state-court loser seeking federal court review of the state court's judgments. Specifically, Mirra cites to *Purpura v. Bushkin, Gaimes, Gains, Jonas & Stream*, 317 F. App'x 263 (3d Cir. 2009), where the Third Circuit applied the *Rooker-Feldman* Doctrine, and argues that the facts in *Purpura* sufficiently mirror the instant action.

In her opposition, Plaintiff argues that These Defendants "failed to include a single document to support the assertion that a **final judgment** in state court has been rendered against any of them." (Pl.'s Opp'n Br. 2, ECF No. 210.)[6] Plaintiff asserts that the Court cannot decide motions to dismiss based on documents outside the four corners of the pleadings. (*Id.* at 3.)

Next, Plaintiff argues that she has never "sued" any of the Defendants with the exception of BSRJ.[7] (*Id.*) Among other arguments,[8] Plaintiff contends that her allegations constitute "independent claims" and that she does not seek review of any judgments. (*Id.* at 4.) Plaintiff provides no further analysis as to why her allegations constitute "independent" claims.

---

[5] Given the large volume of submissions, the Court omits further duplicative citations to the parties' arguments on the *Rooker Feldman* Doctrine, as the following arguments are contained in the citations referenced here.

[6] Plaintiff submits this opposition as a collective response to most of the pending Motions to Dismiss. The Court, therefore, cites to this submission as representative of Plaintiff's opposition to avoid duplicative citation to the record.

[7] This is inaccurate. Plaintiff's 2012 Action was filed against the OK Owners Association, Spronck, Stephenson, and BSRJ. (*See* BMK & Rowland's Moving Br. Ex. A.)

[8] Plaintiff makes a number of other arguments immaterial to the Court's application of the *Rooker-Feldman* Doctrine.

**B.     Res Judicata; Collateral Estoppel; Entire Controversy Doctrine**

Defendants BMK and Rowland (BMK & Rowland's Moving Br. 4-6, ECF No. 136-1),[9] Mirra (Mirra's Moving Br. 15-18), Berman and BSRJ (Berman & BSRJ's Moving Br. 1-3), Marshall Dennehey (Marshal Dennehey's Moving Br. 18-20, ECF No. 156-8), CAU and QBE (CAU & QBE's Moving Br. 10-14), Maintenance Solutions, Sauter, S&A, and SAI (Maintenance Solutions, et al.'s Moving Br. 16-17), and Access, Blair, Condo Management, Cooling, Cousins, Giese, Jones, Leffler, OK Owners Association, RCP, Rentoulis, Spronck, Stephenson, Estate, Thorton (Access, et al.'s Moving Br. 9-13, ECF No. 186-1)[10] (collectively, "These Defendants" for the purposes of this subsection) all argue that the Amended Complaint should be dismissed under res judicata, collateral estoppel, and the entire controversy doctrine.

These Defendants argue that Plaintiff's failure to pay condominium assessments to the OK Owners Association was already litigated three times, resulting in judgments against Plaintiff. These Defendants further argue that Plaintiff's claims in the instant action that were not specifically alleged in the prior cases arise from the same controversy as the previously litigated cases. They argue that merely expanding the list of defendants does not provide Plaintiff with the ability to re-litigate the same controversies. Therefore, These Defendants argue that Plaintiff is barred from bringing this action.

In her opposition, Plaintiff merely states the elements of res judicata, and states that res judicata does not apply. (Pl.'s Opp'n Br. 5.) Plaintiff asserts that the entire controversy doctrine

---

[9] The Court cites to page numbers stamped on the header by the electronic filing system, as BMK and Rowland did not insert page numbers.

[10] Given the large volume of submissions, the Court omits further duplicative citations to the parties' arguments on res judicata, collateral estoppel, and the entire controversy doctrine, as the following arguments are contained in the citations referenced here.

does not apply because "claims can [be] brought to this federal court even when state cases are pending and even after they are resolved in state court." (*Id.* at 5-6.) Plaintiff also argues that collateral estoppel does not bar her claims because, aside from BSRJ, Plaintiff has never sued These Defendants. (*Id.* at 6.) Plaintiff accuses These Defendants of lying to the Court about the underlying state court orders and judgments "that do not exist." (*Id.* at 7.) Specifically, Plaintiff states that no Appellate Division decision has "affirmed" the state judgments alleged by These Defendants. (*Id.*) Plaintiff suggests that Rule 11 sanctions would be appropriate against These Defendants for falsely alleging underlying state court judgments. (*Id.*)[11]

### C.    Failure to State a RICO Claim (Count One)

Defendants BMK and Rowland (BMK & Rowland's Moving Br. 7-12),[12] Mirra (Mirra's Moving Br. 11-13), Berman and BSRJ (Berman & BSRJ's Moving Br. 4-5), Marshall Dennehey

---

[11] Plaintiff misrepresents to the Court that various defendants have lied about the existence of certain underlying state actions.   Various defendants have attached the relevant state court documents in support of their submissions.   Even with the benefit of these attached court documents, Plaintiff insists that These Defendants are making false statements. The Court finds Plaintiff's accusations to be reckless and frivolous in light of the undisputed state court documents that support These Defendants' allegations.  As opposed to Plaintiff's contention, the Court finds that Plaintiff's false statements and reckless accusations of misconduct against Defendants in the face of clear evidence to the contrary are potential grounds for sanctions against Plaintiff.

[12] BMK and Rowland, Mirra, Marshall Dennehey, Suburban, Pumping Services, Access, Blair, Condo Management, Cooling, Cousins, Giese, Jones, Leffler, OK Owners Association, RCP, Rentoulis, Spronck, Stephenson, Estate, and Thorton also argue that, to the extent Plaintiff alleges a separate cause of action under N.J.S.A. 2C:20-5 for extortion, there is no private right of action for extortion under the statute.  (BMK & Rowland's Moving Br. 12-13; Mirra's Moving Br. 13-14; Marshall Dennehey's Moving Br. 17-18; Suburban's Moving Br. 11, Pumping Services' Moving Br. 9; Access, et al.'s Moving Br. 14-15.)  The Court finds that, based on Plaintiff's decision to leave the extortion allegations as a sub-category under the RICO claim in the Amended Complaint, that Plaintiff is not pleading a separate extortion claim. (*See* Am. Compl. ¶¶ 105-07.) To the extent that Plaintiff is seeking to plead a separate count for extortion, the Court agrees with BMK and Rowland that the statute does not provide a private right of action, and therefore grants These Defendants' motions to dismiss as to the extortion claim.

(Marshall Dennehy's Moving Br. 7-17, 21), Suburban (Suburban's Moving Br. 6-10), GNY, Strathmore, McGuffin Law (GSM Defendants' Moving Br. 5-6, 10-17), Schenck Price (Schenck Price's Moving Br. 5, 11-17), CAU and QBE (CAU & QBE's Moving Br. 15-18), Pumping Services (Pumping Services' Moving Br. 6-9, ECF No. 170-1), Maintenance Solutions, Sauter, S&A, and SAI (Maintenance Solutions, et al.'s Moving Br. 11-16), Williams Gas (Williams Gas's Moving Br. 2, ECF No. 185), Access, Blair, Condo Management, Cooling, Cousins, Giese, Jones, Leffler, OK Owners Association, RCP, Rentoulis, Spronck, Stephenson, Estate, Thorton (Access, et al.'s Moving Br. 13-14)[13] (collectively, "These Defendants" for the purposes of this subsection) all argue that Plaintiff fails to sufficiently allege a RICO violation.  These Defendants argue that the Amended Complaint fails to properly allege any of the elements of a RICO violation. Specifically, These Defendants highlight Plaintiff's failure to plead "racketeering activity" and "enterprise," which are necessary elements for pleading a RICO claim.  As to the "racketeering activity" element, These Defendants argue that Plaintiff's allegations of mail fraud and wire fraud fail to meet Rule 9(b) for the following reasons: failure to name specific instances of fraud, and failure to identify specific individuals participating in the instances of fraud.

Additionally, These Defendants argue that the *Noerr-Pennington* Doctrine precludes Plaintiff's RICO claim because those petitioning the government are immune from the petitioning conduct, absent a showing of "sham litigations."  These Defendants further argue that Plaintiff's reference to 18 U.S.C. § 1511 as a predicate act for the RICO allegation is inapplicable because

---

[13] Given the large volume of submissions, the Court omits further duplicative citations to the parties' arguments on Plaintiff's failure to state a RICO claim, as the following arguments are contained in the citations referenced here.

the statute relates to the obstruction of law enforcement in connection with an "illegal gambling business."

As another predicate act to support her RICO claim, Plaintiff alleges a violation of 18 U.S.C. § 1512, which prohibits tampering with a witness, victim, or informant. These Defendants argue that the statute applies only to federal proceedings, and is, therefore, inapplicable to the underlying state actions alleged by Plaintiff.

Plaintiff's final predicate act in support of her RICO claim is "extortion" pursuant to N.J.S.A. 2C:20-5. These Defendants argue that an essential element of extortion under New Jersey law is allegations of threatened force, violence, or fear, which Plaintiff fails to plead. Additionally, These Defendants assert that because Plaintiff's RICO claim arises from conduct during the course of pending litigation, Defendants have absolute immunity from Plaintiff's alleged predicate acts.

As to the "enterprise" element of a RICO claim, These Defendants argue that "enterprise" must have a structure with: (1) a common purpose; (2) relationships among those associated with the enterprise; and (3) longevity sufficient to permit those associates to pursue the enterprise's purpose. According to These Defendants, Plaintiff makes insufficient conclusory allegations regarding the existence of an "enterprise."

These Defendants also argue that Plaintiff's RICO claim is barred due to the expiration of the four-year statute of limitations.[14]  These Defendants assert that Plaintiff's claim arose when they allegedly withheld certain reports in 2008, and that Plaintiff did not file the instant action until November 30, 2015. These Defendants further elaborate that the latest event Plaintiff alleges in

---

[14] Schenck Price's submission also makes identical statute of limitations arguments. (Schenck Price's Moving Br. 6.)

the Amended Complaint in support of her RICO claim took place in March 2011, which occurred beyond the permissible four-year statute of limitations.

In her opposition, Plaintiff argues that all of her allegations should be liberally construed because she brings the instant matter pro se. (Pl.'s Opp'n Br. 1-2.) Plaintiff adds that her Amended Complaint is "well written and probably more detailed than some of those filed by lawyers." (*Id.* at 2.) According to Plaintiff, the Amended Complaint meets the requirements set forth in Federal Rules of Civil Procedure 8 and 9. (*Id.*) Specifically with regard to her RICO claim, Plaintiff merely references the legal standard and states that the Amended Complaint meets the standard. (*Id.* at 4.) Plaintiff provides no further arguments or explanations.

With regard to These Defendants' statute of limitations argument, Plaintiff states that Defendants cannot prove the time at which Plaintiff became aware of her claims. (*Id.* at 4-5.) Plaintiff provides no further arguments or explanations.

### D.    Failure to State an FDCPA Claim (Count Two)

Defendants BMK and Rowland (BMK & Rowland's Moving Br. 13-17), CAU and QBE (CAU & QBE's Moving Br. 18-20)[15] (collectively, "These Defendants" for the purposes of this subsection) all argue that Plaintiff fails to sufficiently allege that they are "debt collectors" or that Plaintiff's condominium fees are "debts" under the FDCPA. These Defendants assert that the FDCPA requires parties to collect debts as a matter of course or as a substantial part of its practice to constitute a "debt collector," which Plaintiff fails to allege. Additionally, These Defendants argue that, under New Jersey law, condominium fees are akin to taxes and are not treated as "debts"

---

[15] Given the large volume of submissions, the Court omits further duplicative citations to the parties' arguments on Plaintiff's failure to state an FDCPA claim, as the following arguments are contained in the citations referenced here.

for the purposes of the FDCPA.  Lastly, These Defendants argue that Plaintiff fails to allege any specific facts of an FDCPA violation.

### E.    Failure to State an Invasion of Privacy Claim (Count Three)

Defendants BMK and Rowland (BMK & Rowland's Moving Br. 17-18), CAU and QBE (CAU & QBE's Moving Br. 19-20), Access, Blair, Condo Management, Cooling, Cousins, Giese, Jones, Leffler, OK Owners Association, RCP, Rentoulis, Spronck, Stephenson, Estate, Thorton (Access, et al.'s Moving Br. 16-17)[16] (collectively, "These Defendants" for the purposes of this subsection) all argue that Plaintiff's allegations exclusively arise from These Defendants' filings in the underlying state proceedings.  According to These Defendants, not only are Plaintiff's allegations conclusory and devoid of specific factual allegations, but they are barred under the litigation privilege doctrine.

In her opposition, Plaintiff argues that litigation privilege does not apply because These Defendants "have deliberately misled the Court into believing there was [sic] prior state court actions involving these defendants upon which the absolute litigation privilege can now be asserted." (Pl.'s Opp'n Br. 6.)

### F.    Failure to State an Intentional Infliction of Emotional Distress Claim (Count Four)

Defendants BMK and Rowland (BMK & Rowland's Moving Br. 18), CAU and QBE (CAU & QBE's Moving Br. 19-20), Access, Blair, Condo Management, Cooling, Cousins, Giese, Jones, Leffler, OK Owners Association, RCP, Rentoulis, Spronck, Stephenson, Estate, Thorton

---

[16] Given the large volume of submissions, the Court omits further duplicative citations to the parties' arguments on Plaintiff's failure to state an Invasion of Privacy claim, as the following arguments are contained in the citations referenced here.

(Access, et al.'s Moving Br. 15-16)[17] (collectively, "These Defendants" for the purposes of this subsection) all argue that Plaintiff's allegations are devoid of specific factual allegations. These Defendants argue that Plaintiff does not even plead that These Defendants' conduct constituted "extreme and outrageous conduct."

### G.    Failure to State a Nuisance Claim (Count Five)

Defendants BMK and Rowland (BMK & Rowland's Moving Br. 18), CAU and QBE (CAU & QBE's Moving Br. 19-20), Pumping Services (Pumping Services' Moving Br. 10-11), Williams Gas (Williams Gas's Moving Br. 3-4), Clinton Sewer (Clinton Sewer's Moving Br. 1-3, ECF No. 187-3)[18] (collectively, "These Defendants" for the purposes of this subsection) all argue that Plaintiff's allegations are devoid of specific factual allegations. Plaintiff allegedly fails to set forth what particular actions caused the alleged damage or what specifically constituted the disruption to Plaintiff. Further, These Defendants argue that Plaintiff failed to allege that they invaded her use of her property, which is a necessary element for nuisance claims.

Additionally, Clinton Sewer argues that Plaintiff failed to comply with the Tort Claims Act's notice requirement under N.J.S.A. 59:8-1 *et seq.*, which is necessary to bring a nuisance action against a public authority such as Clinton Sewer.

Specifically with regard to Pumping Services, Plaintiff's claim for nuisance allegedly fails because Pumping Services was not engaged in the installation of the gas pipeline and never

---

[17] Given the large volume of submissions, the Court omits further duplicative citations to the parties' arguments on Plaintiff's failure to state an Intentional Infliction of Emotional Distress claim, as the following arguments are contained in the citations referenced here.

[18] Given the large volume of submissions, the Court omits further duplicative citations to the parties' arguments on Plaintiff's failure to state a Nuisance claim, as the following arguments are contained in the citations referenced here.

interacted with Plaintiff.  As Pumping Services notes, Plaintiff alleges that These Defendants brought heavy machinery to her private street to install a gas pipeline, which caused a nuisance to Plaintiff.  Pumping Services argues it merely rented the equipment to Frey Engineering and Clinton Sewer, and that Clinton Sewer was responsible for the equipment while it was being rented. Pumping Services argues that it therefore should not be held responsible for the alleged conduct.

In her opposition, Plaintiff argues that Williams Gas "lie[d]" to the Court about its limited and legal use of the utilized property.  (Pl.'s Opp'n Br. 6-7.)  Plaintiff further calls counsel for Williams Gas "idiotic" and proceeds to state that she is "the only one that can speak" to "how [Defendants'] presence disturbed [her] and impacted [her] property." (*Id.* at 7.)

Specifically in response to Clinton Sewer, Plaintiff argues that she does "not believe" that Clinton Sewer is a public authority. (*Id.* at 8.)  Plaintiff asserts that Clinton Sewer employees are not voted into office, but rather Clinton Sewer controls its own machinery and contracts, and rents land from the town to operate. (*Id.*)

### H.      Issues Specific to Defendant Creamer

In its moving brief, Creamer argues that it is hardly mentioned in the Amended Complaint. (Creamer's Moving Br. 1-2, ECF No. 143-1.)  Creamer asserts that Plaintiff only generally references Creamer and provides "no details as to the type of damage or party alleged to have caused the damage" that Plaintiff alleges. (*Id.* at 1.)

### I.      Issues Specific to Defendant Fox Chase

In its moving brief, Fox Chase argues that Plaintiff makes only a single specific reference to it in the original and Amended Complaints. (Fox Chase's Moving Br. 7, ECF No. 152-1.)[19]

---

[19] The Court cites to page numbers stamped on the header by the electronic filing system, as Fox Chase did not insert page numbers.

Plaintiff's only allegation is that Fox Chase may have been paid to perform work on the condominium where Plaintiff resides. (*Id.*) Fox Chase contends that this allegation is insufficient to survive a motion to dismiss. (*Id.*)

**J.     Issues Specific to Defendant Suburban**

In its moving brief, Suburban argues that Plaintiff makes only four references to Suburban in a vague and conclusory fashion. (Suburban's Moving Br. 5.) Plaintiff alleges generally that Suburban withheld certain reports and somehow conspired to obtain improper payments from Plaintiff. (*Id.*) These allegations, according to Suburban, are insufficient to survive a motion to dismiss.

**K.     Settlement Agreement**

The GSM Defendants and Schenck Price argue that Plaintiff signed a settlement agreement ("GSM Settlement Agreement") on March 1, 2011, releasing the GSM Defendants of all claims raised in the instant action. (GSM Defendants' Moving Br. 6-7; Schenck Price Moving Br. 6-8.) According to the GSM Defendants, Plaintiff's own counsel attached a stipulation of dismissal with prejudice. (GSM Defendants' Moving Br. 6-7; Schenck Price Moving Br. 6-8.) The GSM Defendants, therefore, argue that the GSM Settlement Agreement bars Plaintiff's claims. (GSM Defendants' Moving Br. 6-7; Schenck Price Moving Br. 6-8.)

## IV.   **Discussion**

### A.   *Rooker-Feldman* **Doctrine**[20]

*Rooker-Feldman* "is a narrow doctrine." *Willams v. BASF Catalysts LLC*, 765 F.3d 306,

315 (3d Cir. 2014).  Four elements must be satisfied for the *Rooker-Feldman* Doctrine to apply:

> (1) the federal plaintiff lost in state court; (2) the plaintiff
> 'complain[s] of injuries caused by [the]state-court judgments';
> (3) those judgments were rendered before the federal suit was filed;
> and (4) the plaintiff is inviting the district court to review and reject
> the state judgments.

*Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010).  "When,

however, a federal plaintiff asserts injury caused by the defendant's actions and not by the state-

court judgment, *Rooker-Feldman* is not a bar to federal jurisdiction."  *Id.* at 167.  "A useful

guidepost is the timing of the injury, that is, whether the injury complained of in federal court

existed prior to the state-court proceedings and thus could not have been 'caused by' those

proceedings."  *Id.*  Additionally, contrary to Plaintiff's argument otherwise, the Court may consider

court records in considering its subject-matter jurisdiction.  *See Gage v. Warren Twp. Comm. &*

*Planning Bd. Members*, 463 F. App'x 68, 71 (3d Cir. 2012) ("The District Court may take judicial

notice of the record from a previous court proceeding between the parties.").

As to Count One, Plaintiff's RICO claim, Plaintiff's claim is not barred by the *Rooker-*

*Feldman* Doctrine because the claim does not arise from a state court judgment.  Plaintiff alleges

that various defendants "tampered with official proceedings, withheld documents from the [state]

---

[20] Various defendants have raised the *Rooker-Feldman* Doctrine with regard to Counts One
through Four of the Amended Complaint.  No party has raised the *Rooker-Feldman* Doctrine with
regard to Count Five, Plaintiff's Nuisance claim.  To the extent that any defendant believes the
*Rooker-Feldman* Doctrine applies to Count Five, the Court finds that the *Rooker-Feldman*
Doctrine does not apply to Count Five as the Court is unaware of any state court judgment where
Plaintiff seeks review due to an injury arising from that judgment.

court, filed false documents with the [state] court, violated the rules of [the state] court, filed false affidavits and certifications and committed perjury." (Am. Compl. ¶¶ 87-95.)  Plaintiff further alleges that various defendants entered into fraudulent settlements and improperly used OK Owners Association funds to pay legal fees. (*Id.* ¶¶ 90-92.)   Additionally, Plaintiff alleges that various defendants improperly intimidated Plaintiff and potential witnesses in connection with the underlying state court proceedings. (*Id.* ¶¶ 94-95.)

Here, Plaintiff's RICO claim does not arise from any state court judgment, but rather constitutes an "*independent claim*[] that those state court judgments were procured by certain [d]efendants through fraud, misrepresentation, or other improper means." *Great Western*, 615 F.3d at 168. "Even though the injuries of which the [P]laintiff complain[s] helped to cause the adverse state judgments, [this claim was] 'independent' because [it] stemmed from 'some other source of injury, such as a third party's actions.'" *Id.* (quoting *McCormick v. Braverman*, 451 F.3d 382, 384 (6th Cir. 2006)). The Court, therefore, possesses subject matter jurisdiction over Plaintiff's RICO claim for the purposes of the *Rooker-Feldman* Doctrine. The same analysis applies to Count Three, Invasion of Privacy, because the alleged injuries arise from various defendants' conduct during the course of litigation, as opposed to a particular state court judgment. (*See* Am. Compl. ¶¶ 113-18.)

On the other hand, the *Rooker-Feldman* Doctrine does apply to Counts Two and Four of the Amended Complaint. With regard to Count Two, Plaintiff's FDCPA claim, Plaintiff alleges that BMK and Rowland improperly pursued collection actions against Plaintiff in 2014 and 2015. (Am. Compl. ¶ 109.) Plaintiff further alleges that BMK and Rowland made "false and misleading representations in the collection of debts." (*Id.* ¶¶ 110-11.)

In support of her FDCPA claim, Plaintiff alleges that BMK and Rowland improperly "pursued collection action after failing to provide verification in violation of [Section] 1692g(b) in the collection action initiated and pursued in 2014 and 2015." (*Id.* ¶ 109.) Whether Plaintiff is referring to the 2014 Action, the 2015 Action, or both, Plaintiff seeks impermissible review of the state court judgments where the state court found both collection actions proper and meritorious.[21] Here, Plaintiff's alleged injuries under the FDCPA claim arise entirely from the state court judgments and the proper forum for Plaintiff's arguments are on appeal to the New Jersey Appellate Division.

Count Four alleges Intentional Infliction of Emotional Distress against the OK Owners Association, Stephenson, Spronck, Cooling, Jones, Rentoulis, Leffler, Blair, and Access for various conduct that allegedly occurred "for years." (Am. Compl. ¶¶ 119-23.) Plaintiff further avers that these defendants "directed that construction sites be set up in front of the Plaintiff's home in order to disturb her peace and sanctuary and impact the value of her home." (*Id.* ¶ 121.) Additionally, in the section of the Amended Complaint setting forth general facts, Plaintiff alleges that "[d]uring 2011 through today," various defendants "impaired" her "quiet use and enjoyment" of her property. (*Id.* ¶ 78.)

The Superior Court of New Jersey already decided these issues in Plaintiff's 2012 Action and dismissed all claims without prejudice. Plaintiff now seeks federal court review of the state court's judgment, which is improper under the *Rooker-Feldman* Doctrine. In the 2012 Action, Plaintiff brought suit against the OK Owners Association, Spronck, Stephenson, and BSRJ for, among other things, the intentional infliction of emotional distress. There, Plaintiff alleged that

---

[21] Rowland and BMK represented the OK Owners' Association against Plaintiff in the 2014 and 2015 Actions.

the defendants monitored her activities, and improperly destroyed her unit using outside contractors.  (BMK & Rowland's Moving Br. Ex. A, ¶¶ 13, 19-27.)

In light of Plaintiff's failure to specifically allege any facts in support of this Count that occurred after the 2012 Action, the Court finds that the Amended Complaint merely seeks review of the state court's judgment with regard to Plaintiff's claim for intentional infliction of emotional distress.  The Court finds that Plaintiff's allegations regarding the immediately preceding claim for Invasion of Privacy supports the Court's conclusion.  There, Plaintiff alleges that these same defendants "monitored, investigated and inquired about Plaintiff's private activities."  (Am. Compl. ¶ 114.)  These are the same allegations Plaintiff raised in her 2012 Action in support of her failed claim for intentional infliction of emotional distress.  The state court already dismissed, with prejudice, Plaintiff's claim for intentional infliction of emotional distress arising from the same facts.  The Court, accordingly, does not possess subject matter jurisdiction over this claim under the *Rooker-Feldman* Doctrine with regard to Defendants OK Owners Association, Spronck, Stephenson, and BSRJ.[22]

---

[22] To the extent Plaintiff intended to refer to novel occurrences, the Court dismisses this Count for failure to state a claim.  Plaintiff fails to provide any specific factual allegations that meet the elements of a claim for intentional infliction of emotional distress:

> (1) the defendant acted intentionally; (2) the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community["]; (3) the defendant's actions proximately caused him/her emotional distress; and (4) the emotional distress was "so severe that no reasonable [person] could be expected to endure it."

*Soliman v. Kushner Cos.*, 77 A.3d 1214, 1229 (N.J. Super. Ct. App. Div. 2013) (internal citation omitted).  The only fact Plaintiff alleges in support is that certain defendants set up construction sites in front of her home.  (Am. Compl. ¶ 121.)  Otherwise, Plaintiff merely makes conclusory allegations about being "publicly attacked" and "harassed."  (*Id.* ¶ 120.)  Plaintiff proceeds to recite

The Court, therefore, grants Defendants BMK and Rowland's Motion to Dismiss as to Count Two and grants Defendants OK Owners Association, Spronck, Stephenson, and BSRJ's Motion to Dismiss as to Count Four.

**B.      Res Judicata; Entire Controversy Doctrine**

Res judicata "'requires substantially similar or identical causes of action and issues, parties, and relief sought,' as well as a final judgment." *Wadeer v. N.J. Mfrs. Ins. Co.*, 110 A.3d 19, 28 (N.J. 2015) (quoting *Culver v. Ins. Co. of N. Am.*, 559 A.2d 400, 405 (N.J. 1989)). "Thus, '[w]here the second action is no more than a repetition of the first, the first lawsuit stands as a barrier to the second.'" *Id.* at 28 (quoting *Culver*, 559 A.2d at 404). To determine whether causes of action are similar or identical, the court must determine:

> (1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first); and (4) whether the material facts alleged are the same.

*Id.* (quoting *Culver*, 559 A.2d at 405).

Here, for the reasons set forth under the Court's analysis of the *Rooker-Feldman* Doctrine, Plaintiff has already litigated her FDCPA claim against BMK and Rowland, and her claim for intentional infliction of emotional distress against OK Owners Association, Spronck, Stephenson, and BSRJ.  Therefore, even if the *Rooker-Feldman* Doctrine were inapplicable, Counts Two and Four are dismissed as to these defendants under res judicata.

---

the elements for a claim of intentional infliction of emotional distress but fails to identify any facts in support.  (*Id.* ¶¶ 120-23.)

The Court is also "bound by New Jersey's Entire Controversy Doctrine" pursuant to the Full Faith and Credit Act, 28 U.S.C. § 1738, which requires federal courts to give "the same preclusive effect to a state-court judgment as another court of that State would give." *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 887 (3d Cir. 1997). Rule 4:30A of the New Jersey Court Rules ("N.J.C.R.") states: "Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine . . . ." New Jersey's Entire Controversy Doctrine "embodies the principle that the adjudication of a legal controversy should occur in one litigation in only one court; accordingly, all parties involved in a litigation should at the very least present in that proceeding all of their claims and defenses that are related to the underlying controversy." *Wadeer*, 110 A.3d at 27 (quoting *Highland Lakes Country Club & Cmty. Ass'n v. Nicastro*, 988 A.2d 90, 91 (N.J. 2009)).

"In determining whether a subsequent claim should be barred under this doctrine, 'the central consideration is whether the claims against the different parties arise from related facts or the same transaction or series of transactions.'" *Id.* (quoting *DiTrolio v. Antiles*, 662 A.2d 494, 502 (N.J. 1995)). "It is the core set of facts that provides the link between distinct claims against the same parties . . . and triggers the requirement that they be determined in one proceeding." *Id.* (quoting *DiTrolio*, 662 A.2d at 502). Further, "[t]here is no requirement that there be a 'commonality of legal issues.'" *Id.* (quoting *DiTrolio*, 662 A.2d at 504). Rather, the "polestar of the application of the rule is judicial 'fairness.'" *Id.* (quoting *DiTrolio*, 662 A.2d at 505).

The New Jersey Entire Controversy Doctrine does not adopt a mandatory joinder rule, where related non-parties must be joined if a party seeks relief against those non-parties for claims

arising from the same nucleus of facts. *See* N.J.C.R. 4:30A, cmt. 1. Rather, New Jersey law requires parties to a litigation to disclose the

> names of any non-party who should be joined in the action pursuant to [Rule] 4:28 or who is subject to joinder pursuant to [Rule] 4:29-1(b) because of potential liability to any party on the basis of the same transactional facts. . . . A successive action shall not, however, be dismissed for failure of compliance with this rule unless the failure of compliance was inexcusable and the right of the undisclosed party to defend the successive action has been substantially prejudiced by not having been identified in the prior action.

N.J.C.R. 4:5-1(b)(2); *see Ricketti v. Barry*, 775 F.3d 611, 615 (3d Cir. 2015). The previously never-joined defendants in this case who are "seeking application of the entire controversy doctrine[,] [therefore,] bear[] the burden of demonstrating inexcusable conduct and substantial prejudice." *Ricketti v. Barry*, No. 13-6804, 2015 WL 1013547, at *3 (D.N.J. Mar. 9, 2015).

Here, the 2012, 2014, and 2015 Actions involved the following parties: OK Owners Association, Spronck, Stephenson, BSRJ, BMK, and Rowland (collectively, "Prior Defendants"). The Court finds that the remaining defendants who assert the entire controversy doctrine have failed to meet their burden to establish inexcusable conduct and substantial prejudice.

First, with regard to Plaintiff's RICO claim against the Prior Defendants, Plaintiff alleges that the Prior Defendants "tampered with official proceedings, withheld documents from the court, filed false documents with the court, violate[d] the rules of the court, filed false affidavits and certifications and committed perjury." (Am. Compl. ¶¶ 87-88, 93-95.) Plaintiff further alleges the improper use of OK Owners Association's funds to pay for litigation against Plaintiff. (*Id.* ¶¶ 91-92.) Similarly, the alleged predicate acts of mail fraud, wire fraud, and extortion in support of Plaintiff's RICO claim all arise from the 2012, 2014, and 2015 Actions or the facts underlying those actions. (*See* Am. Compl. ¶¶ 96-107.)

Here, Plaintiff is not alleging an improper forum, but rather that her adversaries colluded against her in an effort to succeed against her in litigation. Plaintiff alleges that the "fraud" underlying her RICO allegations arise from various false submissions and representations to the state courts. The validity of these submissions, however, has already been litigated in state court and the state courts entered a final judgment in each of the underlying actions against Plaintiff. The appropriate forum for contesting an adversary's representations of facts to the court is the court that is presiding over that litigation. If Plaintiff believes the state courts made clear errors, the Plaintiff should appeal to the proper appellate forum, which in this case would be the New Jersey Appellate Division. Here, Plaintiff appealed the 2012 Action and the Appellate Division affirmed the judgment against her. To the Court's knowledge, Plaintiff did not appeal the 2014 and 2015 Actions. An unhappy litigant may not avoid res judicata or the entire controversy doctrine by merely calling the adversary's submissions "fraudulent," when that litigant simply believes that her version of the facts is more accurate than her adversary's version.

With regard to Plaintiff's claim for Invasion of Privacy, the Court finds that Plaintiff attempts to recycle her failed claim for intentional infliction of emotional distress in the 2012 Action. Plaintiff provides less specific but otherwise identical factual allegations in support of her new claim for Invasion of Privacy as she alleged in the 2012 Action. The Court, therefore, grants Defendants OK Owners Association, Spronck, Stephenson, BSRJ, BMK, and Rowland's Motions to Dismiss as to Counts One and Three.

### C.    Failure to State a Claim

The Court further grants all Defendants' Motions to Dismiss for failure to state a claim.[23] First, with regard to Plaintiff's RICO claim, a proper claim must plead: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 362 (3d Cir. 2010). "Moreover, where the plaintiff presents a fraud-based RICO claim, [s]he must plead with particularity the circumstances of the alleged fraud." *Mierzwa v. Safe & Secure Self Storage, LLC*, 493 F. App'x 273, 276 (3d Cir. 2012). To survive a motion to dismiss, a plaintiff must "allege facts to show that each [d]efendant objectively manifested an agreement to participate, directly or indirectly, in the affairs of a RICO enterprise through the commission of two or more predicate acts." *The Knit With v. Knitting Fever, Inc.*, 625 F. App'x 27, 36 (3d Cir. 2015).

"Specificity is imperative in this matter, both because Plaintiff['s] fraud allegations implicate the heightened pleading standard of Rule 9(b) and because the RICO statute itself requires specificity, particularly in light of the heavy penalties imposed upon an unsuccessful RICO defendant." *Grant v. Turner*, No. 09-2381, 2010 WL 4004719, at *4 (D.N.J. Oct. 12, 2010). "Thus, conclusory allegations are not sufficient to withstand Rule 9(b). . . . This requires a plaintiff to plead the date, time, and place of the alleged fraud, or otherwise inject precision into the allegations by some alternative means." *Grant v. Turner*, 505 F. App'x 107, 111 (3d Cir. 2012).

In support of her RICO claim, Plaintiff alleges the following predicate acts: (1) tampering with a witness, victim or informant pursuant to 18 U.S.C. § 1512; (2) mail fraud and wire fraud

---

[23] The Court notes that even if the *Rooker-Feldman* Doctrine, the New Jersey Entire Controversy Doctrine, or res judicata did not require dismissal as set forth above, Plaintiff fails to state a RICO claim as to all Defendants.

pursuant to 18 U.S.C. §§ 1341, 1343; and (3) extortion pursuant to 18 U.S.C. § 1511 and N.J.S.A. 2C:20-5.

First, Plaintiff fails to sufficiently plead witness tampering. The only allegations in the Complaint that seem related in any way to witness or victim tampering are that various defendants "used their positions of power to intimidate the Plaintiff from pursuing relief in a court of law and silence her from advising the court of the crimes being committed[;] [and using] mass mailings written against the Plaintiff to intimidate the Plaintiff and others from becoming witnesses." (Am. Compl. ¶¶ 94-95.) The provisions that relate to Plaintiff's allegations all require the tampering to occur in the context of "official proceedings." *See* 18 U.S.C. § 1512. "Official proceedings" in the context of this statute, "do not apply to state court proceedings." *Dougherty v. Adams-Doughterty*, No. 15-8542, 2016 WL 5219460, at *6 (D.N.J. Sept. 21, 2016) (citing 18 U.S.C. § 1515(a)). Given that Plaintiff's allegations only relate to state court proceedings, Plaintiff has failed to sufficiently allege a predicate act pursuant to 18 U.S.C. § 1512.

Next, Plaintiff fails to sufficiently plead the predicate acts of mail fraud and wire fraud pursuant to the heightened pleading requirement under Rule 9(b). Plaintiff merely labels all of Defendants' alleged conduct as "fraudulent," "illegal," or as "embezzlement" in conclusory fashion, without providing specific factual assertions in support of her claim. The elements of mail or wire fraud are: "(a) a scheme to defraud, and (2) a mailing or wire in furtherance of that scheme." *Annulli v. Panikkar*, 200 F.3d 189, 200 n.9 (3d Cir. 1999). "The scheme to defraud . . . does not have to 'be fraudulent on its face, but must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension.'" *In re Ins. Brokerage Antitrust Litig.*, No. 04-5184, 2016 WL 5219456, at *8 (D.N.J. Sept. 16, 2016) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004)).

Additionally, the Court can "only consider as predicate racketeering acts those wire frauds which have been alleged to have been transmitted by wire "in interstate or foreign commerce" and those mail frauds that are alleged to have made use of the United States Postal Service." *Briksza v. Moloney*, No. 08-1785, 2009 WL 1767594, at \*9 (D.N.J. June 19, 2009).

Here, Plaintiff merely alleges that certain defendants communicated "by mail, email and phone" to coordinate various court filings, to communicate with Plaintiff, and to give Plaintiff notice of pending collections, liens, and legal demands. (Am. Compl. ¶¶ 97-102.) Plaintiff makes no mention of the use of wires in interstate or foreign commerce, and makes no mention of the United States Postal Service. Additionally, Plaintiff fails to adequately plead a scheme to defraud, as she fails to allege a specific "fraudulent statement, the time, place, speaker and content of the alleged misrepresentations." *Briksza*, 2009 WL 1767594, at \*9. As a result, Plaintiff fails to provide any notice to Defendants "as to the precise misrepresentations or omissions that were 'calculated to deceive' another or how they were connected to a fraudulent scheme."[24] *Hlista v. Safeguard Props., LLC*, 649 F. App'x 217, 222 (3d Cir. 2016).

Next, Plaintiff also fails to sufficiently plead the predicate act of extortion. Plaintiff's allegation under 18 U.S.C. § 1511 fails because the statute merely makes it unlawful "to obstruct the enforcement of the criminal laws of a State or political subdivision thereof, with the intent to facilitate an illegal gambling business . . . ." 18 U.S.C. § 1511(a). Given that Plaintiff does not plead any allegations regarding an illegal gambling business, Plaintiff's claim is inadequately pled.

Similarly, Plaintiff's extortion allegation under N.J.S.A. 2C:20-5 also must be dismissed. The statute states that "[a] person is guilty of theft by extortion if he purposely and unlawfully

---

[24] The Court further finds that Plaintiff's lack of specific allegations make it impossible for the Court to determine whether the statute of limitations has expired on Plaintiff's claims.

obtains property of another by extortion." N.J.S.A. 2C:20-5. The statute defines extortion as when one "purposely threatens" to harm another in various ways. N.J.S.A. 2C:20-5(a)-(g). Plaintiff specifically alleges that she was extorted under Subsections (c) and (g). (Am. Compl. ¶ 105.) Subsection (c) requires a threat to "[e]xpose or publicize any secret or any asserted fact, whether true or false, tending to subject any person to hatred, contempt or ridicule, or to impair his credit or business repute." N.J.S.A. 2C:20-5(c). Subsection (g) requires a threat to "[i]inflict any other harm which would not substantially benefit the actor but which is calculated to materially harm another person." N.J.S.A. 2C:20-5(g).

As to Subsection (c), Plaintiff merely recites the definition of extortion and does not set forth any facts in support. Plaintiff does not identify any "secret" and does not allege that Defendants threatened to expose that secret. Further, Plaintiff does not allege how such secret would tend to subject her to hatred, contempt or ridicule, or how it would impair her business repute. Similarly, as to Subsection (g), Plaintiff only recites the definition and fails to allege any facts in support of her claim. Plaintiff fails to identify a harm that Defendants threatened to inflict, which would not substantially benefit Defendants but is calculated to materially harm Plaintiff. To the extent that Plaintiff intended to incorporate her allegations regarding court filings, and other alleged misrepresentations by Defendants in the course of state-court litigation, New Jersey's litigation privilege doctrine bars Plaintiff's extortion allegation.[25] *See Rickenbach v. Wells Fargo Bank, N.A.*, 635 F. Supp. 2d 389, 401 (D.N.J. 2009).

---

[25] Although ultimately immaterial because Plaintiff's Invasion of Privacy claim is dismissed for lack of subject matter jurisdiction, the Court further notes that New Jersey's litigation privilege doctrine further requires the Court to dismiss Plaintiff's Invasion of Privacy claim because the claim arises solely from conduct engaged during the course of state-court litigation.

Given that Plaintiff has failed to adequately plead any predicate acts in support of her RICO claim, the Court dismisses Plaintiff's RICO claim as to all Defendants.

### D.   Counts Three, Four, and Five

As the Court has granted Defendants' Motions to Dismiss with regard to Plaintiff's only federal claims (Counts One and Two), the Court dismisses any of Plaintiff's remaining pendent state tort claims. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."). The Court, therefore, grants the Moving Defendants' Motions to Dismiss with regard to Counts Three, Four, and Five of Plaintiff's Amended Complaint.[26]

### E.   Amendment of Pleading

A district court may deny the plaintiff an opportunity to amend her pleading if "based on bad faith or dilatory motives, . . . repeated failures to cure the deficiency by amendments previously allowed, or futility of amendment." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1414 (3d Cir. 1993). First, Plaintiff's repeated filings, based on the same core factual occurrences, demonstrate that Plaintiff possesses all the facts regarding these events and has had numerous opportunities to plead them. Moreover, Plaintiff's actions have repeatedly been dismissed in state and federal court litigation. For example, in Plaintiff's 2012 Action, the New Jersey Superior Court rejected her fraud allegations as conclusory. (*See* March 2013 Decision at 269-70.)

---

[26] Although defendants Henkels and McCoy, Inc. and Frey Engineering did not file motions to dismiss, Plaintiff's claims are dismissed as to all Defendants, including Henkels and McCoy, Inc. and Frey Engineering. The only claims Plaintiff alleges against Henkels and McCoy, Inc. and Frey Engineering are state law claims, which the Court dismisses for lack of subject matter jurisdiction.

Plaintiff also brings the same claims to this Court and continues to add judges, attorneys, and government entities who have disagreed with Plaintiff on the merits in past cases. Plaintiff's repeated failed litigation of the same core issues is indicative of Plaintiff's refusal to accept the underlying judgments and to instead bring new actions without specific meritorious factual allegations. Moreover, when Plaintiff moved for leave to file a Second Amended Complaint in the instant action, the Court denied the motion without prejudice by directing Plaintiff that she must attach a proposed Second Amended Complaint to her motion. (ECF No. 221.) Plaintiff's failure to submit a proposed Second Amended Complaint during the subsequent five-month period indicates Plaintiff's bad faith and dilatory motives to prolong the litigation without a good faith effort to cure pleading defects.

Further, Plaintiff filed her Complaint in this case on November 30, 2015. Various defendants then filed motions to dismiss discussing the pleading deficiencies that the Court identifies above. Plaintiff had an opportunity to file an Amended Complaint on March 13, 2016, with the benefit of seeing the submissions in support of various defendants' original motions to dismiss. Nevertheless, Plaintiff failed to cure any of the defects or to show a good faith effort to address the defects outlined by those defendants. Moreover, in Plaintiff's 2014 Action, which arises from the same core facts as the instant matter, the Court repeatedly found Plaintiff's pleadings to contain insufficient detail to comply with Rule 8 of the Federal Rules of Civil Procedure. *See Jaye v. N.J. Attorney Gen. John Hoffman, et al.*, No. 14-7471 (D.N.J. Dec. 2, 2014). There, the Court provided Plaintiff with three opportunities to comply with Rule 8 before ultimately dismissing Plaintiff's Second Amended Complaint with prejudice under Rule 12(b)(6). *Id.* at 2.

Finally, the Court also finds that granting Plaintiff leave to amend would be futile. "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). The futility of an amendment is assessed under the same standard as Rule 12(b)(6); therefore, a plaintiff must be allowed to amend a complaint subject to such a dismissal "unless the amendment would not cure the deficiency." *Id.* Here, a significant part of Plaintiff's claim is barred under the *Rooker-Feldman* Doctrine and res judicata as shown above. Further, Plaintiff's RICO claim is largely based on wholly irrelevant predicate acts where Plaintiff's first two pleadings fail to suggest the existence of adequate facts. Plaintiff's claim is otherwise composed of various state law claims over which this Court declines to exercise subject matter jurisdiction.

Therefore, the Court grants all Moving Defendants' Motions to Dismiss as to all counts and as to all Defendants with prejudice, in light of Plaintiff's bad faith and dilatory motives, repeated failures to plead an adequate complaint, and futility.

### F.    Remaining Pending Motions

As the Court is granting the Moving Defendants' Motions to Dismiss on all counts as to all Defendants, Plaintiff's remaining pending motions are moot and therefore denied. (ECF Nos. 231, 241, 262, 263, 270, 283, 288, 289.)  Similarly, Frey Engineering's pending motion is also denied. (ECF No. 257.)

## V.    Conclusion

For the reasons set forth above, the Moving Defendants' Motions to Dismiss are GRANTED on all counts and as to all Defendants with prejudice.  An order consistent with this Memorandum Opinion will be entered.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

**Dated:** November 30, 2016

34